UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALASDAIR DAVID MCADAM MARIOTTI<br><br>Petitioner,<br><br>and<br><br>BETHANY ROSE RYCZEK<br><br>Respondent. | Case No.: 21-cv-00158 |

**PETITIONER'S MOTION TO PROVIDE TESTIMONY IN OPEN COURT BY CONTEMPORANEOUS TRANSMISSION**

Petitioner, Alasdair David McAdam Mariotti ("Mariotti"), by and through his attorneys, Steinhilber Swanson LLP, by Kenneth R. Sipsma and Eliza M. Reyes, pursuant to Federal Rule of Civil Procedure 43, files this Motion to Provide Testimony in Open Court by Contemporaneous Transmission, seeking entry of an order allowing him to appear and testify at the trial in these proceedings via videoconference. In support of this Motion, Mariotti states as follows below. This Motion is further supported by the Declaration of Alasdair David McAdam Mariotti ("Mariotti Declaration") filed contemporaneously with this Motion.

**Background**

1. On March 9, 2021, Mariotti initiated these proceedings by filing his Petition For Return of Child to Petitioner Under the Hague Convention of Civil Remedies for International Child Abduction ("Petition") [Dkt 1]. Mariotti brought the Petition pursuant to the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, which came into effect in the United States on July 1, 1988, and in Italy on May 1, 1995 (the "Hague

Convention"), the International Child Abduction Remedies Act, 22 U.S.C. Sec. 9001 et seq., ("ICARA") and Ch. 782, Wis. Stats.

    2.      Pursuant to ICARA, 22 U.S.C. § 9003(a), state courts and United States district courts have concurrent original jurisdiction of actions arising under the Hague Convention.

    3.      This Court has jurisdiction over this matter pursuant to 22 U.S.C. § 9003 because this case involves the wrongful removal and wrongful retention of a child under the age of 16 from his habitual residence of Rome, Italy, to the United States of America ("United States").

    4.      Pursuant to the Petition, Mariotti asserts that on or about March 20, 2020, Bethany Rose Ryczek, the Respondent herein ("Ryczek"), abducted their child M.J.M.M. from Italy to the United States, without Mariotti's knowledge, consent or legal permission.

    5.      A three-day trial in these proceedings is scheduled to begin on August 18, 2021.

    6.      Mariotti submits that good cause in compelling circumstances exist such that he should be allowed to appear and testify at the trial via videoconference.

**Relief Requested and Legal Basis for Request**

    7.      Mariotti respectfully requests that this Court allow him to appear and testify at the trial in these proceedings by contemporaneous transmission via Zoom videoconference.

    8.      Federal Rule of Civil Procedure 43(a) addresses testimony by transmission:

> (a) In Open Court. At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Courtprovide otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony inopen court by contemporaneous transmission from a different location.

FRCP 43(a). Here, there exists "good cause in compelling circumstances" to permit these witnesses to testify by video conference. *See Id.*

9.      Mariotti cannot make himself physically present in the United States for the trial due to his extreme claustrophobia and anxiety with flying. Mariotti Declaration, ¶2.a. As a young child, he suffered from sleep paralysis, a condition in which he would wake up unable to move. *Id.* The episodes left him with the feeling of being trapped. *Id.*

10.     Then, when he was 10-years old, Mariotti witnessed an episode involving an attempted kidnapping of two of his neighbors while he and his family were living in South Africa. Mariotti Declaration, ¶2.a. When his parents intervened in the kidnapping attempt, the perpetrators shot at his parents, wounding his mother and killing his then two-year old sister who was in her mother's arms. *Id*. Shortly after this incident, Mariotti and his family flew home to Scotland, which was the last time Mariotti was able to fly in an airplane. *Id*.

11.     Mariotti suffers from a condition called "amygdala hijacking," which causes his brian to be overwhelmed by a threat or perceived threat, causing intense emotional and physical reactions and his inability to deal with the situation. Mariotti Declaration, ¶2.a. Eight years ago, Mariotti attempted to fly but was unable to take the flight, getting off the plane before it took off. *Id.*

12.     Mariotti has sought remedies to address his anxieties throughout the years, unfortunately to no avail. ¶2.a. Mariotti does not take drugs to help him cope with his conditions. *Id*. He once attempted to take a prescribed anti-anxiety medication to try to travel by plane but the effects of the medication were not good. *Id*. Taking drugs specifically to fly to the United States for this trial is not an option, nor recommended by Mariotti's doctors, as drugs may have a counter-effect of increasing Mariotti's brain activity while decreasing physical control. *Id.*

13.     Since 1991, Mariotti's travel has been limited within the European community, mainly by car, which has also presented problems for Mariotti depending on particular

3

circumstances. Mariotti Declaration, ¶2.a. Traveling by train is also problematic for Mariotti due to tunnels and undergrounds. *Id*. Mariotti discussed traveling by sea to the United States but being on the ocean for a number of days without sign of land induces the same reactions Mariotti experiences. *Id*.

14. Here, if forced to travel to Wisconsin from Italy, Mariotti not only subjects himself to vulnerability to his conditions, but also to travel restrictions during the ongoing Covid-19 pandemic. Second, compelling Mariotti to travel from Italy to Wisconsin to provide testimony would be economically unreasonable for him. Third, the Hague Convention text and policy requires courts conducting Hague Convention proceedings to adopt the most expeditious mechanisms and remedies possible. Convention, art. 2. A postponement for an indeterminate time to allow Mariotti to travel safely and without travel restrictions, is not proportionate to the good cause that exists in compelling circumstances for this Court to grant this motion.

15. There is little case law in the Seventh Circuit on the contemporaneous transmission testimony rule. However, the United States District Court for the District of Maryland recently considered the rule in *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479-80 (D.Md. 2010). In *Lopez,* the district court, in anticipation of a jury trial, ruled that certain plaintiffs would be permitted to testify from Honduras by video conference for the jury. *Id.* In *Lopez* the district court explained:

> Despite videoconferencing's deficiencies, courts in this circuit and elsewhere have approved or affirmed its use in the civil context. *See generally Rusu v. INS,* 296 F.3d 316 (4th Cir.2002) (asylum proceeding); *United States v. Baker,* 45 F.3d 837 (4th Cir.1995) (civil commitment hearing); *Edwards v. Logan,* 38 F.Supp.2d 463 (W.D.Va.1999) (civil rights action); *see also In re Merck Prods. Liab. Litig.,* 439 F.Supp.2d 640, 642 (E.D.La.2006) (listing cases). These cases reflect a "consistent sensitivity to the utility of evolving technologies that may facilitate more efficient, convenient, and comfortable litigation practices." 9A Wright & Miller, *Federal Practice & Procedure* § 2414 (3d ed. 2008). And while videoconferencing has its shortcomings, it at least appears to

> be favorable to alternative methods, such as the submission of written deposition testimony. *Sallenger v. City of Springfield,* No. 03–3093, 2008 WL 2705442, at *1 (C.D.Ill. July 9, 2008).
>
> In this case, Plaintiffs have demonstrated good cause as to those Plaintiffs residing in Honduras. The cost of international travel can provide good cause for contemporaneous transmission of testimony. *See, e.g., Dagen v. CFC Grp. Holdings,* No. 00 Civ. 5682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003). In some cases, travel cost and inconvenience have justified contemporaneous transmission even when the parties where located within the United States, in contrast to the internationally resident Honduran Plaintiffs in this case. *See, e.g., Beltran–Tirado v. INS,* 213 F.3d 1179, 1186 (9th Cir.2000) (affirming use of telephonic testimony for hearing in California where witness was in Missouri); *Scott Timber, Inc. v. United States,* 93 Fed.Cl. 498, 499–501 (2010) (approving use of videoconferencing for trial in Washington, D.C., where witness was in Oregon); *Fed. Trade Comm'n v. Swedish Match N. Am., Inc.,* 197 F.R.D. 1, 2 (D.D.C.2000) (finding good cause for videoconferencing where witness was in Oklahoma and hearing was in Washington, D.C.). Forcing the Honduran Plaintiffs in this case to travel to the United States would impose substantial inconvenience and cost on persons with strikingly few financial resources. (Paper 76–1). When viable alternatives like videoconferencing are available, compelling individuals who make no more than $7,000 a year to travel hundreds of miles seems fundamentally unjust. And although the court sympathizes with Defendants' claim that this litigation has already imposed substantial costs on them as well (Paper 75, at 4–5), those costs do not justify imposing needless expense on Plaintiffs.

*Lopez* at 479-480.

      16. More recently, courts in other jurisdictions have exercised the discretion afforded to them by Rule 43(a) and allowed testimony to be presented at trial via videoconference, finding that the Covid-19 pandemic and its impact on parties' and witnesses' ability to appear in person during court proceedings constituted "good cause and compelling circumstances" under Rule 43(a) to permit witnesses to testify at a bench trial via videoconference. *In re RFC & ResCap Liquidating*

5

*Tr. Action,* 444 F. Supp. 3d 967, 971 (D. Minn. 2020), *see also, Raffel Systems, LLC v. Man Wah Holdings Ltd., Inc.,* 2020 WL 8771481 *2 (E.D. Wis. 2020).

17. The court in *RFC* acknowledged that "[c]onducting a trial by videoconference is certainly not the same as conducting a trial where witnesses testify in the same room as the factfinder…[c]ertain features of testimony useful to evaluating credibility and persuasiveness, such as '[t]he immediacy of a living person' can be lost with video technology, and the 'ability to observe demeanor, central to the fact-finding process, may be lessened." *See In re RFC*, 444 F. Supp. 3d at 970 (internal citations and quotations omitted). However, the court then concluded that "advances in technology minimize these concerns, and the "near-instantaneous transmission of video testimony through current technology permits…[in a bench trial, the Court] to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitance, [and] his calmness or consideration[.] *Id*. The court then further found that "[g]iven the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony 'satisfies the goals of live, in-person testimony…'" *Id.* at 971.

18. Similarly, in *Raffel Systems* the court found that conducting a hearing by video would allow the trier of fact to properly hear the witnesses' testimony, observe their demeanor, and overall evaluate the witnesses' credibility. *See Raffel Systems,* 2020 WL 8771481 *3. The court also found that because the hearing to be conducted was a bench trial where there would be a single fact-finder as opposed to a jury trial with multiple fact-finders listening to and viewing the testimony, it would be able to "get an even closer look at…the other witnesses' faces via videoconference than I could during an in-person hearing." *Id*. The court in *Raffel Systems* then

found that because the proceedings would be a bench trial, the court was confident that it would adequately understand the witnesses' testimony through videoconference technology. *Id.*

19. Mariotti is requesting that he be permitted to appear and testify at the bench trial by Zoom video conferencing. Mariotti submits that his conditions with regard to travelling more than demonstrate good cause for allowing his contemporaneous transmission at the trial via videoconferencing. *See* Mariotti Declaration, ¶2.a.

20. Here, similar to the courts in *RFC and Raffel Systems*, this Court is conducting a summary and expedited bench trial, in which this Court will be the only trier of fact. As the courtrooms in the Western District of Wisconsin are all electronically equipped, there is no reason to believe that this Court would not be able to understand Mariotti's testimony through videoconference technology.

21. Additionally, the continuing effects of the Covid-19 pandemic on international travel and the costs of flying from Italy to Wisconsin, are both good cause and a compelling circumstance to grant this Motion.

22. Moreover, these proceedings would cause any parent severe anxiety. Mariotti's current situation with regard to M.J.M.M. coupled with his claustrophobia and issues with being able to travel by airplane, is undoubtedly already causing Mariotti extreme anxiety. It would be severely detrimental to Mariotti's mental health to force him to attend the bench trial in person. This alone is good cause and a compelling circumstance to grant this Motion.

23. Finally, a discussed previously herein, the Hague Convention mandates the most expeditious mechanisms and remedies available to the parties involved in such proceedings, even allowing testimony by affidavit only in certain circumstances. *See,* Convention, arts. 2., 14.

Therefore, this Court should exercise its discretion and permit Mariotti to appear and provide testimony via Zoom during the forthcoming bench trial.

**WHEREFORE**, the Petitioner, Alasdair David McAdam Mariotti, respectfully requests the entry of an Order granting this motion and permitting him to testify by contemporaneous transmission via Zoom videoconference at the forthcoming trial, and to grant such other relief as this court deems just and necessary.

Dated this 16th day of July 2021.

**STEINHILBER SWANSON LLP**

By: *s/ Kenneth R. Sipsma*
Kenneth R. Sipsma
Eliza M. Reyes
Colton J. Chase
122 West Washington Avenue, Suite 850
Madison, Wisconsin 53703
(608) 630-8991
*ksipsma@steinhilberswanson.com*
*ereyes@steinhilberswanson.com*
*cchase@steinhilberswanson.com*

**ATTORNEYS FOR ALASDAIR DAVID MCADAM MARIOTTI**