UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ALASDAIR DAVID MCADAM MARIOTTI<br><br>Petitioner,<br><br>and<br><br>BETHANY ROSE RYCZEK<br><br>Respondent. | Case No.: 21-cv-00158-jdp |

**PETITIONER'S EXPLANATION OF DISPUTED ISSUES OF LAW**

1.      Was Italy M.J.M.M.'s habitual residence under the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction as implemented under 22 U.S.C. Sec. 9001 et seq., ("ICARA") at the time Ryczek removed the child from Italy on or about March 23, 2020.

An order for M.J.M.M.'s return to Italy may be entered if M.J.M.M. is being retained in a country other than his habitual residence. It is agreed M.J.M.M is being retained in the United States. Petitioner contends Italy is M.J.M.M.'s habitual residence. The determination is a highly fact-specific inquiry turning on the particular circumstances of each case. Facts considered may include how well the child was acclimated to his environment at the time of removal; the intention of the parents; the time the child was physically located in a particular place; and the child's medical care, school and childcare, social life and extended family. The parent removing the child may not present post-removal evidence to establish the child's habitual residence.

Petitioner contends all facts support finding that Italy is M.J.M.M. habitual residence

2.      Was Ryczek's removal of M.J.M.M. from Italy on or about March 23, 2020 in breach of Mariotti's custody rights under law of Italy.

Petitioner's rights of custody are defined by the law of Italy. Petitioner has custody rights under Title IX, Italian Civil Code of Law, Art. 316. This should not be a disputed issue of law.

3.      Was Mariotti exercising his custody rights under the law of Italy at the time Ryzcek wrongfully removed M.J.M.M. from Italy.

Very little is required to determine a party is exercising custody rights once the rights are established. In this case, Petitioner and Respondent share time with M.J.M.M. per an agreement negotiated by their Italian lawyers prior to Respondent wrongfully removing M.J.M.M.

Petitioner participated in decisions related to M.J.M.M.'s healthcare and childcare, and shared the child's expenses with the Petitioner. Petitioner involved the child with his extended family and his community. Petitioner was waiting for Respondent to transfer M.J.M.M. to him on the day Respondent wrongfully removed M.J.M.M. from Italy. It is indisputable Petitioner was exercising his custodial rights at the time of the removal.

     4.     Does there exist a grave risk such that the return of M.J.M.M. to Italy would expose the child to psychological or physical harm or would otherwise place him in an intolerable position.

The exception for a grave harm is not a license for a court in the abducted-to-country to speculate on where the child would be happiest. That decision is a custody matter reserved for the court in the country of the child's habitual residence. The grave risk defense may not be used as a vehicle to litigate the child's best interests.

The party opposing return bears the burden of establishing the exception by clear and convincing evidence. It is universally accepted the grave risk exception is subject to narrow interpretation.

Grave means more than a serious risk. Physical or sexual abuse of the child may form the basis of a defense. This is a fact-based inquiry. There is to be a careful consideration of the nature and frequency of abuse, the likelihood of its recurrence and whether there are any enforcement undertakings that would sufficiently ameliorate the risk of harm to the child upon return.

M.M.J.M. has not been the subject of any form of physical or sexual abuse by the Petitioner. M.M.J.M. has not witnessed any form of physical or sexual abuse of the Respondent, in particular, because none has occurred. The is no evidence of domestic violence. There is no evidence to support this defense.

     5.     Did Mariotti consent and acquiesce to Ryzcek's removal of M.J.M.M. from Italy and his retention in the United States.

Consent refers to permission given before the child is removed. Acquiescence refers to conduct after removal. These defenses, like others are narrowly interpreted. Consent can be established by statements or conduct indicating the parent has given consent to the removal and retention of the child for an indefinite period or permanently. Courts generally look at the overall conduct of the parties in determining whether consent or acquiescence has occurred, as opposed to focusing upon isolated words or conduct.

The facts show Petitioner neither consent nor acquiesced to M.J.M.M.'s removal.

Dated this 20th day of July 2021.

        **STEINHILBER SWANSON LLP**

    By:   *s/ Kenneth R. Sipsma*
        Kenneth R. Sipsma
        Eliza M. Reyes
        Colton J. Chase
        122 West Washington Avenue, Suite 850
        Madison, Wisconsin 53703
        (608) 630-8991
        *ksipsma@steinhilberswanson.com*
        *ereyes@steinhilberswanson.com*
        *cchase@steinhilberswanson.com*

        **ATTORNEYS FOR ALASDAIR DAVID MCADAM MARIOTTI**